# Boyd's Appeal.

38     241
25 SC  470

*Power of the Common Pleas to vacate Decree of Divorce obtained by Fraud or Imposition on the Court.*

Where a wife left the residence of her husband, with his consent and approbation, and remained absent for two years, with her father's family, it was *Held*, that a decree of divorce, obtained by the husband in her absence, on the ground of desertion, and without notice to her, was not improperly vacated and annulled by the court, even after the husband's death, there being evidence of fraud and imposition on the part of the libellant.

APPEAL from the Common Pleas of *Philadelphia county.*

This was an appeal by David Boyd, Jr., as administrator of the estate of Harvey J. Smith, from the order and decree of the Court of Common Pleas, vacating and annulling the decree of divorce granted in the case of Harvey J. Smith *v.* Mary C. Smith, as also from the decrees directing the payment of counsel fees and allowance for the support of Mary C. Smith and child, by the said administrator, and confirming the decrees of the register of wills, by which the letters of administration granted to the appellant were annulled, and letters granted to said Mary.

The case was this. On the 18th of August 1857, Harvey J. Smith filed his libel, praying for a divorce *a vinculo* from his wife, Mary C. Smith, on the ground of wilful and malicious desertion. A *subpœna* was issued, and returned *N. E. I.* An *alias subpœna* was then issued, which was also returned *N. E. I.* On the 21st of December 1857, an order of publication was issued, returnable to March Term, which was returned "Published in Leg. Int." Interrogatories in the usual form were then filed, depositions taken, and a divorce as prayed for decreed, May 15th 1858, a copy of which was sent to Mrs. Smith, who was then with her father in Georgetown, Ky. In August 1858, Mr. Smith was taken sick, removed to Georgetown, and remained at his father's house until February 22d 1859, when he died.

On the 5th of March 1859, Mrs. Smith presented her petition to the Common Pleas of Philadelphia, setting forth her marriage to Mr. H. J. Smith, in December 1852, in Georgetown, Ky., their removal to Philadelphia, their residence there until August 2d 1855, at which time, with her husband's consent, and by his direction, she returned to visit her father's family and friends; that her husband procured her tickets, and paid her fare out, sending her in charge of Mr. Ringo and wife; that she had no idea of his desire to be separated from her until it was communicated to her by letters from him, August 29th 1855; that she refused to consent, and so informed him by letter, but that he persisted, and procured a divorce without any information or

2 WR.—16

notice of the institution of legal proceedings, until the certificate of divorce was transmitted to her; denying the desertion, charging that her husband sent her away for the purpose of obtaining the divorce, and praying the court to vacate and annul the decree, &c., &c.

On filing this petition, a rule was granted, and notice given by publication in Philadelphia and Georgetown, Ky. Depositions were taken, and on the hearing, the court made absolute the rule to vacate the decree of divorce, and set the decree aside, which was followed by decrees for alimony, counsel fees, and for confirming the decree of the register and the Register's Court above mentioned. The case was then removed into this court by appeal, where the decrees of the Common Pleas in the premises were assigned for error.

*William L. Hirst*, for appellant.—The proceedings for divorce were all regular, no defect has been pointed out, so that the case turned on the *animus* of Mrs. Smith, when she left for Kentucky, August 2d 1855. If she did not *intend* to return, it was desertion; and if she remained absent two years there was legal ground for the divorce. She was absent more than two years, and there is some evidence of her intention to remain to be found in the testimony. She knew of the decree in May 1858, and moved not in the matter until after nine months, and after his death. This is acquiescence, it is more than *laches*. The decree had fixed their rights, and could not be vacated. There was no fraud or imposition here, as in Allen *v.* Maclellen, 2 Jones 330, nor had the time for appeal gone by. If wronged by his wish to separate, she should have returned during his lifetime for redress, but after his death and her acquiescence in the decree of divorce, it was error to vacate it.

*M. Mundy*, for appellee.—The main questions are, was this divorce obtained by fraud upon the Court of Common Pleas, and has the court power to annul the decree.

Judge Allison, having heard the whole case, has decided that it was obtained by fraud practised upon the court, and Allen *v.* Maclellen warrants the court in vacating the decree. All the minor questions depend on this. The evidence brought the case within that of Vanleer *v.* Vanleer, 7 Harris 213, and justified the annulling of the decree of divorce.

The opinion of the court was delivered, February 21st 1861, by THOMPSON, J.—In this appeal it is proposed to reverse the action of the court below in striking off the decree of divorce entered May 15th 1858, in the case of Harvey J. Smith, libellant, and Mary C. Smith his wife. Ordinarily this would not be

[Boyd's Appeal.]

a subject of review, because not final; but here, as the libellant was dead at the time of setting aside the decree, it finally ended the case so far as the divorce was concerned.

It was contended here that the court had no power to strike off after the lapse of time which had occurred before moving the court to do so, being a period of something like ten months, and especially as the libellant had died in the mean time. This objection has all its force, if indeed it have any, on the basis of supposed rights acquired through the deceased. These objections we will briefly notice hereafter. The reason moving the court in their summary treatment of the decree was what seemed to them satisfactory evidence of imposition practised by the libellant in procuring it to be made. The opinion of the learned judge of the Common Pleas, that the court might deal with it on such grounds, is clearly and authoritatively sustained in Allen *v.* Maclellen, 2 Jones 328, in an opinion by Gibson, C. J. We see no reason for departing from that precedent; and following it, we think the court had the right to exert the power which it did under the circumstances. In that case, as well as the present, the action of the court in annulling the decree was within the year, and at a time when there might have been an appeal. But this circumstance the court did not seem to regard as material.

It was earnestly pressed in the argument, that the dissolution of the decree would seriously affect the rights of property under the will of Harvey J. Smith. This may be true, and so would it be by any debt or demand which should have the effect to diminish the value of the legacies in the will; but this would not be a good reason for disallowing the demand. It seems to me that there might be quite as much room for a complaint from the other side if the decree had been permitted to stand.

One thing is quite certain—that its rescission does not affect the relation of the parties to each other. Death has irrevocably settled that, and neither good nor evil can henceforth ensue on that aspect. It is perhaps now simply a question of property, resulting as a consequence from the act; it has no other consequence that we can perceive.

But suppose that the rights of the devisees may to some extent be affected by setting aside the decree: this is no reason of itself against the act, unless some rule or principle of law forbids it; and this we have seen is not the case on the authority of the precedent already cited. But, without deciding on the rights of claimants under the will, it appears to me that they stand in no better position, so far as the claim of the widow is concerned, than their testator, if living, would have stood after the reversal of the decree. It can hardly be maintained that his death concluded her. The act of God injures no one: but this might be doubted were it to be held that death sealed up and

sanctified a fraud upon her rights if it existed. If the devisees claim, as they do, under him, they must stand in his shoes. And if, by reason of imposition practised on the court, he could not maintain the decree, upon what ground can they? That it might have been reversed on appeal, no one can doubt; for the time for taking it had not elapsed. His death could not have prevented that. The result would have been precisely the same, as far as his devisees are concerned, as it is in the present aspect of the case. And, as has been already shown, an appeal was not the only mode of correcting the error. We are now to examine whether the court is sustainable in their decision under the evidence, in the mode adopted for its correction. It seems that Harvey J. Smith, who is represented by the appellant here, was married to Mary C., his wife, in December 1852, and that they lived together in this city until the 2d of August 1855, when she left on a visit to her friends in Kentucky. The testimony in the case seems very clear that she went away with her husband's permission and consent, and that he furnished her money to bear her expenses on the journey. Just twenty days after she left, he wrote her a letter, in which he refers to some reports alleged to be in circulation in regard to himself and wife in Kentucky, but he does not say explicitly what they were. In that letter he alleges that he and his wife had never been congenial to each other; that they had never lived happily together; that he had no hopes of being happy with her; and emphatically adds, "*It is out of the question for us ever to think of living together again.*" After some further remarks he adds, "I sincerely hope, Mary, that the change we are about to make will be made in friendship on both sides." We find what change was referred to by looking into another letter of his, to his wife, dated September 25th 1855, less than two months after she had left his residence, in which he says, "My heart assures me that were you left free to act, and not influenced by older heads, that you would at once give your *free consent* to a friendly and final separation." What more significant and distinct admission could there be, that she had not left him with a view not to return, when she left to go to her friends in Kentucky? Her letter to which this was a reply, clearly showed that. In the conclusion of the letter he says he will not say that this would be his last letter to her, "but I do say I am unwilling to enter upon a protracted correspondence," &c. And so far as is disclosed by the testimony, this was the last but one written a few days after, accompanying her piano and clothing, voluntarily sent to her by him.

After all this, and on the 11th of August 1857, he preferred his petition to the Court of Common Pleas of Philadelphia county, for a divorce from his wife from the bonds of matrimony, in which he set forth, under oath, his own dutiful conduct as a

husband from the time of his marriage up to the 2d of August 1855; that on .that day his wife "wilfully and maliciously deserted and absented herself from the habitation of your libellant without just or reasonable cause, and such desertion has persisted in for the term of two years and upwards," &c. Within these two years, it will be remembered, the letters alluded to had been written, in which it had been stated that it was out of the question for them to live together again, and in which she was besought to agree to a final separation; and also within which it was proved that he had broken up housekeeping and sent to her her effects, as already stated. Notwithstanding this, and upon an *ex parte* proceeding and proclamation, he obtained a decree of divorce.

If we were to pass by as a mistake even, the fact proved by his father, that his consent had been given to her leaving at the time she did, and take it that there was evidence on the, part of the libellant, at the time of granting the divorce, from which it might be inferred that she did desert, a fact not easy to discover; yet this was not sufficient, unless a wilful and malicious desertion continued for two years at least. Now how could he allege the existence of this in the face of his letters and acts referred to? The law allowed her two years as a *locus penitentiæ*, even if she had gone away originally with a view not to return again. But he did not allow her this latitude of repentance, even if it be supposed she did intend to desert. He certainly could not claim that she should have returned, not to her home, for that was broken up, but to search for him after his explicit notice that he could not live with her. Was it true, therefore, that she either deserted originally, or persisted in a wilful and malicious desertion for two years? The court below thought she had done neither on the exhibition of these letters and other, testimony presented on the rule to show cause; and we cannot see how they could have come to any other conclusion, in the face of these letters and the proof. The simple question then recurs, was not the decree obtained under a false presentation of facts, and the court imposed upon? That it was so, cannot be doubted, unless we hold that he was not under obligation to disclose the whole truth, and adopt the doubtful morality that everything is fair in law, as it is said to be in war. This no court will allow; and hence, unless some paramount right did intervene which cannot be overlooked, the court did right to relieve their records from entries which appeared to them to have been procured to be made by fraud or imposition. The complaint of want of notice, at the time of striking off the decree, to parties interested, we must take to be without foundation, as they were represented there and here by able counsel. This summary method of correcting errors in fact on motion and rule to show

cause, has in appropriate cases taken the place of the writ of error *coram nobis*, and the practice has generally worked well, the court controlling any abuse of it. It is possible, however, that the old remedy might be preferable. Be this as it may, however, as we find no error in the proceedings of the court below, the order striking off the decree of divorce is affirmed.