## Given *v.* Given, Appellant.

*Divorce—Evidence—Loss of papers—Docket entries—Minute book.*

Where the papers in a divorce proceeding have been lost from the files, the docket entries and the minutes of the court are evidence of the contents of the record.

Every intendment of fact is to be made in support of the regularity of the proceeding, and a judgment is not to be reversed at random, or for sus-

picion of error, where it may be erroneous or not, according to the existence
of circumstances which do not appear.

A final decree in divorce will not be set aside after the expiration of fifty-
nine years upon the uncorroborated testimony of the respondent, the wife,
that she was not served, and that she was not represented by counsel, and
upon the claim unsupported by sufficient proof that the libelant at the
time was not a citizen of Pennsylvania, where the docket entries and the
minutes of the court show (the papers having been lost from the files),
that respondent was served, that she was represented by counsel, that an
examiner had been appointed, that a rule to show cause had been entered,
and that a final decree had been made. In such a case the fact that the
docket entry does not show when the subpœna had been served is imma-
terial.

*Appeals—Petition to revoke decree in divorce—Discretion.*

The jurisdiction of the Superior Court to review a decree dismissing a pe-
tition to revoke a final decree in divorce is found in the Act of May 20,
1891, P. L. 101, allowing an appeal from a refusal to open, vacate, or strike
off judgments. The proceeding is in the nature of an application to a
chancellor, and upon appeal, the appellate court will only reverse when
there has been a clear abuse of discretion.

Argued Dec. 17, 1903. Appeal, No. 214, Oct. T., 1903, by
defendant, from decree of C. P. Phila. Co., Dec. T., 1842, No. 53,
refusing to revoke decree in divorce, in case of William Given
*v.* Hannah Given. Before RICE, P. J., BEAVER, ORLADY,
SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Petition to revoke final decree in divorce.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*V. Gilpin Robinson*, with him *Charles G. Canfield*, for ap-
pellant.—On October 15, 1842 (date of alleged writ), the li-
belant was a citizen and resident of the state of Ohio. This
court was, therefore, without jurisdiction to grant a decree in
divorce.

The record fails to show any evidence of any personal serv-
ice of a libel in divorce upon the petitioner, or, in lieu of such
service, any evidence that she could not be found within the
county of Philadelphia.

The courts will vacate a decree of divorce, obtained by fraud
or imposition even after a long lapse of time: Gambe v. Gambe,
22 Pa. C. C. Rep. 23; Boyd's App., 38 Pa. 241; Allen v. Ma-

clellan, 12 Pa. 328; Everett v. Everett, 60 Wis. 200 (18 N. W. Repr. 637); Caswell v. Caswell, 24 Ill. App. 548; Fidelity Ins. Co.'s App., 93 Pa. 242; Peterson v. Peterson, 6 W. N. C. 449; Hull v. Hull, 8 Pa. Dist. Rep. 420; Wilt v. Wilt, 2 Dauph. County Rep. 100.

*Henry T. Dechert,* with him *Sheldon Potter* and *Leoni Melick,* of *Melick, Potter & Dechert,* for appellees.—The action of the court below is not subject to review: Kepner's App., 94 Pa. 74; Mortimer's App., 9 W. N. C. 313; Gram's App., 4 Watts, 43; Pittsburg v. Maxwell, 179 Pa. 553; Buchanan v. Moore, 10 S. & R. 275; Harvey v. Thomas, 10 Watts, 63; Woods v. Halsey, 9 Pa. 144.

Everything is to be presumed in favor of the regularity of the proceedings of a court of justice: Springbrook Road, 64 Pa. 451.

OPINION BY PORTER, J., July 28, 1904:

This proceeding was begun and a subpœna sur libel for divorce a vinculo matrimonii issued on October 15, 1842, returnable the first Monday of December following, and was so proceeded in that, on February 25, 1843, a divorce was decreed. That decree stood unquestioned for over fifty-nine years. The respondent, on November 17, 1902, presented a petition and obtained a rule on J. A. Smith, executor of William Given, deceased, to show cause why the decree in divorce entered February 25, 1843, should not be vacated and annulled. The petition set forth that the parties were married in 1838 and lived together in Philadelphia until October, 1840, that the petitioner then being ill was ordered by the doctor to go to the home of her parents or to a hospital; that she went to the home of her parents in Philadelphia, where her husband went to see her at different times requesting her to go back to housekeeping with him, but that she was unable to do so because of her physical condition, being unable to walk up or down stairs, and that she communicated these facts to her husband; that early in the spring of 1841 her husband's visits ceased; the latter part of 1841 or early part of 1842 she received a letter from him dated at Cleveland, Ohio, and that the last time she saw her husband was shortly before Christmas, 1842, when he

called at her father's house in Philadelphia. The petition further averred that the respondent had continued to live with her parents in the city of Philadelphia until the year 1862, and she has lived in that city ever since, that the subpœna in divorce was never served upon her, that she did not employ or authorize David Paul Brown to act as her counsel in that proceeding and had no knowledge of his appearing for her, and that the first notice that she had of the decree of divorce was in September, 1901, shortly after she had, in the early part of the same month, heard of the death of her husband. The grounds upon which the petition based the right to have the decree vacated were : (*a*) " That on October 15, 1842, the said William Given was a citizen 'and resident of the state of Ohio, and the said court was, therefore, without jurisdiction to grant a decree in divorce ; " (*b*) " that the record fails to show any evidence of any personal service of a libel in divorce upon the petitioner, (the respondent), or in lieu of such service, any evidence that she could not be found within the county of Philadelphia." The other grounds upon which she based her alleged right were : that the libelant had no legal cause for obtaining said decree and that there were certain irregularities in the proceedings, which were set forth in detail, but none of them were of a jurisdictional character. Testimony was taken under the rule, and a large amount of oral and written evidence submitted for the consideration of the court. The rule was discharged and the respondent appeals.

This cannot be considered as an appeal from the original decree, the right of the appellant to raise any question as to the sufficiency of the evidence upon which the court passed in 1843, or as to any irregularities in the proceedings, not of a jurisdictional nature, has long been barred by lapse of time : Kepner's Appeal, 94 Pa. 74. The court below had power to vacate the decree, if satisfied that the court was without jurisdiction to enter it, or that it was procured by fraud or imposition : Allen v. Maclellan, 12 Pa. 328 ; Boyd's Appeal, 38 Pa. 241 ; Fidelity Insurance Company's Appeal, 93 Pa. 242.

The court had jurisdiction of the subject-matter, and there was nothing in the record to show that it was without authority to enter a decree in this particular case. The papers in the case have been lost from the files, and in their absence the

docket entries and the minutes of the court were evidence of the contents of the record: Buchanan v. Moore, 10 S. & R. 275 ; Harvey v. Thomas, 10 Watts, 63 ; Woods v. Halsey, 9 Pa. 144. These presented the only evidence of the proceedings of the court which had resulted in this decree.   They established that a libel in divorce had been filed on October 15, 1842, that the same day a subpœna had been awarded and issued, returnable to the first Monday of December, 1842, and that the subpœna had been returned " served."   Robert M. Lee, Esq., appeared as attorney for the libelant, and for the respondent the appearance of David Paul Brown was entered.   William King, Esq., was, on December 23, 1842, appointed examiner in the case.   On December 30, 1842, interrogatories were filed ; on February 27, 1843, an affidavit of defense was filed ; a rule to show cause why a divorce should not be decreed was entered on February 24, 1843, and on February 25, 1843, that rule was made absolute.   This is all that appears of record, the subpœna was made returnable at the time required by law, and the record shows that it was served.   It is true that the docket entry did not show when the subpœna had been served, and the return which is usually indorsed upon the writ has been lost. Every intendment of fact is to be made in support of the regularity of the proceeding, and a judgment is not to be reversed at random or for suspicion of error, where it may be erroneous or not according to the existence of circumstances which do not appear : Gram's Appeal, 4 Watts, 43 ; Pittsburg v. Maxwell, 179 Pa. 553 ; Springbrook Road, 64 Pa. 451.   The court, after the return of the subpœna, had authority to make such preparatory rules and orders in the cause that the same might be brought to a hearing and determined at the term to which the process was returnable, or afterwards, and to determine the same ex parte, if necessary.   When neither of the parties demand a jury trial the court is vested with authority to " inquire and decide upon the case, in the presence of the parties, or if either of them will not attend, then ex parte by the examination of witnesses or interrogatories, exhibits or other legal proofs, had either before or at the hearing."   The subpœna having been returned " served," it must be presumed that the court, when after the return day it appointed an examiner, had before it a return which showed the service to be regular, or that the

irregularity was waived : English v. English, 19 Pa. Superior Ct. 586. The appearance having been entered for the respondent by a well known attorney of the court, the record clearly indicates that she was there in court and subject to its decree. An examiner was appointed, interrogatories were filed, and the provisions of the statute do not require that the testimony shall be made a part of the record ; this record does not indicate that the court entered this decree in the absence of testimony. The contention of the appellant that the court was without jurisdiction to enter the decree has no foundation in the record.

The burden was upon the appellant, in order to sustain her contention, to establish by evidence outside of the record the facts which required the vacation of this decree. In passing upon the evidence, by which it was attempted to establish those facts, the court below was vested with a discretion. Our jurisdiction to review the conclusion reached must be found in the Act of May 20, 1891, P. L. 101, allowing an appeal from a refusal to open, vacate or strike off judgments. The proceeding is in the nature of an application to a chancellor, and upon appeal, the appellate court will only reverse when there has been a clear abuse of discretion : Kelber v. Plow Company, 146 Pa. 485 ; Jenkintown National Bank's Appeal, 124 Pa. 337.

There was no evidence whatever that the libelant had ever made any representation to the respondent which could have misled her as to this proceeding. The imposition if there was any must have been practiced upon the court. The appellant undertook to prove that the libelant at the time of the institution of this proceeding was a resident of the state of Ohio ; she undertook to establish that fact by evidence satisfactory to the court below. The learned judge was not convinced upon that point, and a careful review of the evidence has not satisfied us that his conclusion involved an abuse of discretion. William Given had been a resident of Philadelphia from his boyhood, and the appellant concedes that he had lived there until the spring of 1841. His father and mother lived there. After his wife left him and returned to her home he boarded in that city for a time. He was a journeyman bricklayer, working by the day. The appellant testified that in the latter part of the year 1841 she received a letter from William Given dated at Cleveland, Ohio ; she did not say that the letter contained any

statement tending to show that he had there taken up his residence, but on the contrary she did testify that she received information from a reliable source that he was in the city of New York a short time after she received the letter and that she herself saw him in Philadelphia shortly before Christmas, 1842. The only positive and direct evidence that William Given had been in the city of Cleveland prior to the date of the making of the decree in this proceeding was that of Gleazen F. Lewis, who at the time he testified, in 1903, was over eighty-two years of age, and had during the period to which his testimony relates been engaged in peddling popcorn and apples in the city of Cleveland. He stated that he became acquainted with Given in that city in the year 1842, or the latter part of 1841; that he became intimately acquainted with him in 1842, and saw him very frequently in Cleveland during the years 1842 and 1843, and he stated positively that he did not know Given's particular place of residence in that city during those years. The witness testified to but one circumstance which could have had any tendency to fix in his mind any particular occasion upon which he saw Given in the city of Cleveland, during either the years 1841 or 1842; as to the remainder of his testimony, it was that of an old man giving his recollection of the times of his meeting, more than sixty years before, an individual in whom he could have had no particular interest. The circumstance which might have fixed in the mind of the witness the date of one of his meetings with Given was the witness's own marriage, which he said was in the latter part of December, 1842, that two or three weeks before his marriage he had consulted Given as to where he could rent a house, and Given had advised him upon that point. If the witness was correct as to this date, Given could not long have remained there, for the respondent testifies that she saw him in Philadelphia shortly before Christmas in the same month. But even if Given was in Cleveland in December, 1842, this was after the date of the filing of the libel, the date as of which the jurisdiction is to be determined. The testimony of Lewis, that Given, a journeyman bricklayer, free to come and go, worked and was frequently seen in Cleveland without having a known place of residence there, may all be true, but the inference that he had changed his permanent place of residence, or intended to do

so, does not necessarily follow. A careful consideration of the testimony of this witness, when compared with the other testimony in the case, leads us to the conclusion that his memory was not accurate as to the time of his meetings with Given. He testified that in the year 1843 he, the witness, left Cleveland and saw but little of Given for several years afterwards. He testified positively that William Given had married a Miss Miles, but upon the name of Simmons being suggested to him by counsel he corrected that statement and said it was a Miss Simmons, and that there was a good deal of talk about the marriage, and about Given's having two wives, one in Cleveland and one in Philadelphia, and all this was before the witness removed from Cleveland. Now it was conclusively established by the testimony in the case that William Given married Mary E. Simmons on January 15, 1844, which fact, taken in connection with the testimony of the respondent that she herself saw Given in Philadelphia in December, 1842, leads us to the conclusion that Lewis must have been mistaken at least one year in his dates. The catalogue of the "Old Settlers' Association," published after the year 1890, stating that Given first came to "The Reserve" in 1841, may state the fact correctly, but that does not establish that he came there for the purpose of permanently residing, nor would the instrument be competent evidence for that purpose in the absence of testimony as to the source from which the information came upon which the catalogue was made up. The records of the registration of electors in the city of Cleveland for the years 1897 and 1898, in view of the conflict between them and the testimony of the officers as to the manner in which they were made up, are not convincing evidence that William Given was a resident of Ohio in 1841. The officers seem to have made the preliminary investigation with a view only to determining the material facts whether the elector had resided within the state and the precinct for a sufficient period of time to entitle him to vote; if they were satisfied as to those facts, they did not regard a few years more or less as important. We are not convinced, after a thorough investigation of all the testimony, that the conclusion of the court below that the appellant had failed to establish that William Given had ceased to be a legal resident of the city of Philadelphia prior to the institution of

this proceeding involved an abuse of discretion. The evidence in support of the allegation that the respondent had no notice of this proceeding until after the death of William Given in 1901 was not sufficient to overcome the inferences arising from the record, and was in itself unsatisfactory. This branch of respondent's contention was wholly dependent upon her own testimony. We do not deem it necessary to pass upon her competency as a witness; whether competent or not the evidence was not sufficient to accomplish the purpose for which it was offered. The record showed that the defendant had been served, and that an attorney had appeared for her. She testified that she had not been served, and had not authorized David Paul Brown to appear as her counsel, and was not aware that he had done so. She admitted that David Paul Brown had been the friend of her father for many years, and it is hardly probable that counsel of standing would attempt without authority to represent the daughter of his friend. She testified that she knew during all the years of their separation that William Given visited Philadelphia every two years, and that she believed he was alive, until 1901, when she heard of his death; she knew in 1873 that Given had visited the house of their son, who had grown to manhood and married, and made presents to the children, and she knew that the father and son had met at the funeral of the mother of the former, in Philadelphia, about the year 1880. The respondent, knowing that William Given was living, joined with other members of her family, on April 15, 1866, in executing a deed, for real estate in the city of Philadelphia, in which she was described as Hannah Swift Given, "widow of William Given, deceased." In the year 1867, she joined her sister in the purchase of two separate tracts of land in the city of Philadelphia, in the deeds for which she is described as Hannah S. Given, "widow," without saying widow of whom. In the years 1868, 1870, 1874, 1877, 1880, 1882 and 1884 she joined her sister in executing mortgages upon land in the city of Philadelphia, in all of which she is described as "Hannah S. Given, widow," without saying widow of whom. She and her sister, in October, 1888, sold and conveyed certain land in Philadelphia to her son, who was also the son of William Given in which deed she is again designated as "Hannah S. Given, widow." And in

1886 she executed a deed in the name of "Hannah S. Given," without other designation. The respondent knew that William Given was living all this time, and the only reasonable explanation for her having made these deeds is that she knew she had the right to make them, because she had been legally divorced. When her son accepted the conveyance, in 1888, he not only knew that William Given was living, but that he was married again and had a family living in Cleveland. This is shown conclusively by a letter which that son had in his possession and which was offered in evidence in this case. The respondent admitted that she was informed in September, 1901, that this decree had been entered, yet she took no steps to have it vacated until November, 1902, even then taking a longer time than is by law given for an appeal in such cases.

The decree in this proceeding was entered on February 25, 1843; William Given, on January 15, 1844, in the city of Cleveland, Ohio, married Mary E. Simmons, who died on April 1, 1884. Given subsequently, on August 23, 1885, married a third wife who survived him. Given died, leaving to survive him a number of children and grandchildren, the fruit of his marriage with Mary E. Simmons; the legitimacy of those children is of course dependent upon the validity of this decree. William Given made no attempt to conceal his subsequent marriages, nor to keep secret the place of his abode. He frequently visited Philadelphia taking his wife with him. He made known to his son, the son of the respondent, the existence of his second family, many years before his death; this certainly indicated that he believed that the respondent was fully aware of the existence of the decree. The judges who entered this decree, all the counsel who appeared in the cause, the examiner who took the testimony, and all persons connected with the proceeding, save alone this respondent, are long since dead. The evidence offered to impeach the decree was not sufficient to warrant the court below in striking it down.

The order of the court below is affirmed.