## Ganster v. Ganster.

*Divorce — Rule to set aside—Jurisdiction—Domicile—Collusion—Estoppel —Laches.*

1. A party exempt from jurisdiction, where the court has jurisdiction of the subject-matter, may waive his personal privilege, and if he does so, the jurisdiction of the court is complete.

2. Where a respondent in divorce proceedings entered an appearance and filed an answer and afterwards withdrew the appearance and answer, and the divorce proceedings were continued *ex parte* with her knowledge and without objection, she cannot, after the divorce is granted, move to set it aside for want of jurisdiction.

3. Domicile is a matter of intention. Residence is a physical fact; a *bona fide* residence means residence with domiciliary intent; a home in which the party actually lives.

4. Every intendment of fact is to be made in support of the regularity of a proceeding, and a judgment is not to be reversed at random, or for suspicion of error, where it may be erroneous or not according to the existence of circumstances which do not appear.

5. A decree in divorce will not be opened where the respondent is guilty of gross laches, as where she waited more than a year after the decree to make the application, having knowledge of the proceedings.

6. Where negotiations were pending for a financial settlement before an application for divorce was made, and a final settlement was reached coincident with a withdrawal of an appearance and answer by the respondent, though counsel testify that this settlement was not made for the purpose of obtaining the respondent's consent to the divorce, the respondent is estopped from attempting to set aside the divorce on this ground. Though the transaction has a suspicious look, she cannot keep what she asserts were the fruits of an illegal bargain and yet repudiate her agreement.

Rule to set aside decree of divorce. C. P. Lancaster Co., Dec. T., 1920, No. 33.

*L. R. Geisenberger, B. C. Atlee* and *E. H. Deysher,* for rule.

*E. M. Gilbert, John A. Coyle* and *Wellington M. Bertolet,* contra.

LANDIS, P. J., Jan. 19, 1924.—On Nov. 16, 1920, the libellant presented his petition, asking that a divorce be granted to him from the respondent on the ground of cruel and barbarous treatment, and thereupon a subpœna was duly issued. On Dec. 20, 1920, at the request of the respondent, a bill of particulars was filed by him. On Jan. 5, 1921, after a rule was duly granted, she filed her answer. On Sept. 27, 1921, the libellant amended his libel by adding thereto the ground of adultery, and on Oct. 18, 1921, an issue was framed on both grounds. In the meantime, John E. Malone and John B. Stevens had entered their appearance as the counsel for respondent; but on Jan. 24, 1922, the following paper was signed by her and filed: "I hereby authorize and direct you to withdraw your appearance for me in the above case, and like-

wise my answer filed in the same," and thereupon, by leave of court, counsel withdrew their appearance and the answer. On the same day, interrogatories on both grounds were filed, and F. Lyman Windolph, Esq., was appointed master. After due notice served personally on the respondent, testimony was taken on Feb. 7, 1922, before the master, to support the charge of cruel and barbarous treatment and indignities to the person, and on the recommendation of the master, a divorce was granted on March 4, 1922. Thus the case rested until June 18, 1923, when the respondent presented her petition to this court and obtained this rule.

In 1920 the libellant had been arrested in Berks County for desertion. Upon a hearing, the Court of Quarter Sessions ordered him to pay to his wife for her support the sum of $20 per week. There were also some money claims which she made against her husband. Originally, there was a house and lot located in the City of Reading held in the name of both the parties. The libellant conveyed his interest therein to his wife. There was a mortgage against it, and this she insisted should be paid off by him. John B. Stevens, Esq., was her counsel in Reading. Before the proceeding for the divorce was instituted or contemplated, libellant offered to pay her $5000 in settlement of all demands made by her, but she asked $10,000, and no agreement was arrived at between them. When the case came on for trial, these demands were again taken up, and it was finally agreed that she should receive $7000. This amount, about this time—the date was not fixed by any one—was paid to Mrs. Stevens. In her deposition the respondent testified that "she decided to accept that sum in payment of all alimony," and when she came to Lancaster, she "knew it (the case) was not to come up in court;" that Mr. Malone asked her whether she was satisfied that this case be not tried before a jury, and told her that "this is to withdraw the jury trial and the appearance;" that with this knowledge she then signed the paper. Both Mr. Stevens and Mr. Malone testified that the divorce did not enter into this settlement, and that all the parties had been advised that no arrangement between them would be valid that contemplated the consent to the obtaining of a divorce in consideration of the payment of any money to respondent. After the master was appointed, the respondent came to Lancaster and called on Mr. Windolph. She asked him to let her see the testimony, which she evidently knew had been taken before him. He replied, that it had been delivered to Mr. Gilbert, and that it was either in his hands or in the possession of the court. He then informed her, in answer to her inquiry, that the charge of adultery had not been withdrawn from the libel, but that no testimony had been taken before him in support of it. She was also told that the court would meet shortly and a final decree would be entered, and that, if she wanted to contest the divorce or to object to the final decree, she should see her attorney forthwith. She took no action to revoke the decree until more than a year had elapsed after it was entered.

Two propositions are raised in the case. The one is whether the libellant was a resident of Lancaster City when the subpœna was issued. The second is whether there was such collusion between the parties as to render the decree nugatory and void. Whether the respondent had a full defence to the action need not be discussed, for it is conceded that a full opportunity to present it was given her when she was in court with counsel. It is not averred that any facts have been subsequently developed that she was not fully conversant with at that time.

As to the first proposition, we think she has failed to establish her complaint. It is essential to the obtaining of a divorce on the ground of cruel and

Ganster *v.* Ganster.

barbarous treatment or indignities to the person that the libellant shall be a *bona fide* resident of the State and shall have resided therein for upwards of one year previous to the filing of the libel. It is also required that the libel be presented in the Court of Common Pleas of the county where the injured party resides, but this was subsequently amended so that it may also be presented in the court of the county in which the respondent resides. The first of these allegations must be averred in the petition as a jurisdictional fact, and when the evidence fails to establish them, the libel must be dismissed: Frazer *v.* Frazer, 71 Pa. Superior Ct. 382. Domicile is a matter of intention. Residence is a physical fact, and *bona fide* residence means residence with domiciliary intent—a home in which the party actually lives: Starr *v.* Starr, 78 Pa. Superior Ct. 579. In English *v.* English, 19 Pa. Superior Ct. 586, it is said: "Objections to jurisdiction are of two classes, between which there is a clear and well-settled distinction: First, those relating to the authority of the court over the subject-matter, and, secondly, those relating to its authority over parties. Objections of the first class cannot be waived nor jurisdiction obtained by acquiescence. But in the second class the rule is different. The party exempt from jurisdiction may waive his personal privilege, and, if he does so, the jurisdiction of the court is complete. Thus, if the defendant is not duly served with process, or is a non-resident beyond the reach of process, or if served while temporarily exempt as a juror or party or witness, or member of the legislature, the proceeding as to him will be void or voidable on showing the facts. But if he waives his exemption and appears voluntarily, the jurisdiction of the court over him is thereafter beyond question."

In Newbold's Appeal, 2 W. N. C. 472, it was decided that, after the report of the examiner is filed and a rule taken to show cause why a decree should not be entered, the respondent cannot raise a question of jurisdiction. In Nagle *v.* Nagle, 3 Gra. 155, Lewis, C. J., delivering the opinion of the court, said: "What is this but a trial of a local suit in the wrong county? Conceding for the argument, but without deciding the point, that the wife ought to have filed her libel for divorce in the county where her husband resides, the right of the husband to a trial in that county was a personal convenience which he might waive. The objection touches his privilege rather than the jurisdiction of the court, for the latter extends over the subject-matter of divorces. . . . When the court was about to proceed to the trial, the answer was withdrawn and a plea to the jurisdiction was filed. The plea is not on the paper-book, and it is alleged that it has been lost. . . . If it contained nothing but an allegation that the parties resided in Berks County at the time of the injury and that the libellant has ever since resided in Schuylkill County, it was properly overruled. After delaying her for so long a period of time and putting her to the trouble of preparing her cause for trial in Schuylkill County, it would have been grossly unjust to turn her out of court on such an objection." See, also, our own case of Brown *v.* Brown, 37 Lanc. Law Rev. 556, and Nevil *v.* Heinke, 22 Pa. Superior Ct. 614. It would seem, therefore, conclusively that the respondent, from this standpoint, has no legal ground upon which to rest. However, outside of this, the facts are against her. The libellant testified, and his testimony was not contradicted, that he changed his residence from Reading to Lancaster, and that he rented a room at No. 150 East King Street; that afterwards, when he was in Reading, he stopped at hotels by the day. He had a right to change his place of abode, and he had a right to go gack to Reading frequently on business, if the change was made in good faith and not for the purpose of establishing a pretended residence in order to support an application for divorce. As, then, his claim is not con-

tradicted, we must assume that he had a legal residence in Lancaster when he presented his petition. Every intendment of fact is to be made in support of the regularity of the proceeding, and a judgment is not to be reversed at random, or for suspicion of error, where it may be erroneous or not, according to the existence of circumstances which do not appear: Given v. Given, 25 Pa. Superior Ct. 467.

Let us now proceed to consider the second proposition. The Act of March 13, 1815, § 2, P. L. 150, directs that the libellant "shall, together with such petition or libel, also exhibit an affidavit on oath or affirmation . . . that the complaint is not made out of levity or by collusion between the said husband and wife for the mere purpose of being freed and separated from each other." That negotiations were had between these parties before any application for divorce was made cannot be doubted. The libellant offered his wife $5000 in settlement of their difficulties, and she refused it. He had been giving her $15 a week, intermittingly, and finally he suspended the payments. She then had him arrested, and the Court of Quarter Sessions of Berks County ordered him to pay her the sum of $20 per week. This order was in force when the divorce proceedings were commenced. When the trial was continued and the issue and pleadings were withdrawn, there must have been some kind of an agreement whereby she was to receive the sum of $7000. Mr. Stevens says, and even she to an extent corroborates him, that this was not for the purpose of obtaining her consent that a divorce be procured without objection by her, but for the settling of the alimony by a lump sum, and also for the compromising of some other claims which she advanced. It is certain that, after the divorce was granted, she received from him, as her counsel, the sum of $7000, and that she still retains it. It must be admitted that the transaction has a suspicious look, but, under these facts, it does not lie in her mouth to keep what she asserts were the fruits of an illegal bargain and yet repudiate her agreement.

The payment of money by the libellant to the respondent to induce her to withdraw her defence to the divorce would, I think, be collusion, even though the agreement was made and the money was paid after the presentation of the petition. In Kilborn v. Field, 78 Pa. 194, it was held that a contract between a husband and wife, pending proceedings in divorce, to pay her a sum of money, the consideration of which was, in whole or in part, that she would not oppose the divorce, is void. But even if this be true, the respondent is estopped from proving the facts she alleges. In Miltimore v. Miltimore, 40 Pa. 151, which was a proceeding in divorce, Thompson, J., said: "The second assignment of error is upon the rejection of the evidence to show fraud in the obtaining the decree, or, rather, that the defendant's application for a divorce was collusive and the proof of the same character. 'Nemo allegans suam turpitudinem' is a maxim of the law which forbids such an attempt. It would be a monstrous doctrine to permit parties to tamper with judicial proceedings in such a manner." And in Field v. Field, 67 Pa. Superior Ct. 355, the court said: "The first petition did not set up collusion, and the second clearly alleged it. But the agreement alleged by the petition to furnish consideration for his acquiescence in the divorce is contrary to public policy. . . . It is clear that petitioner was not entitled to relief, even if a fraud was committed. His prayer was addressed to the conscience of a chancellor, and his petition convicts him of being a party to, and a sharer in, the results of the fraud. He does not come into court with clean hands, and is not entitled to relief."

In addition, the respondent has been guilty of gross laches. She was duly served with the interrogatories and the notice of the time of taking the depo-

sitions. While she did not then appear, she did come to Lancaster and she saw the master and received full information before the decree was entered. She also, through her counsel, promptly received a copy of the decree. Nevertheless, she waited more than a year before she made this application. In Catts v. Catts, 35 Pa. Superior Ct. 293, it was held that a decree of divorce will not be opened where the respondent has been guilty of gross laches.

We are convinced that, on her own showing, the respondent ought to have no standing in this court, and that her petition ought to be dismissed at her costs, and that the rule to show cause why the decree of divorce should not be set aside ought to be discharged.

Petition dismissed, at cost of petitioner, and rule discharged.

From George Ross Eshleman, Lancaster, Pa.