CASES DECIDED IN ALL THE

# JUDICIAL DISTRICTS

OF

# PENNSYLVANIA

## VOL. V.

---

### Walton v. Walton.

*Divorce—Fraud by libellant as to address of respondent—Setting aside decree.*

1. Where libellant, at the preliminary hearing held by the master to ascertain the address of respondent for the purpose of giving her notice, testified that he did not know where she was living at the time, and was unable to give the master any information which would enable him to communicate either with her or with her son or daughter, while he (libellant) had such knowledge, the fraud went to the jurisdiction and vitiated the whole proceeding; and the decree was set aside.

2. In an application to set aside a decree in divorce for fraud, it is not necessary for the respondent to show, either in the petition or in the depositions, that, had she appeared and defended, she would have had a good defence to the action.

3. Where libellant supported his application for divorce by his own testimony exclusively, in reliance upon which a decree was granted, and it subsequently appears, upon an application by respondent to set the decree aside for fraud, that libellant was guilty of perjury at the preliminary meeting held by the master to ascertain the address of the respondent, the court will apply the doctrine of *falsus in uno, falsus in toto*, in disposing of the application to set the decree aside, and will refuse to believe the libellant's uncorroborated testimony in any particular.

Memorandum under Rule 58 of the Superior Court of reasons for making absolute rule to vacate and annul final decree of divorce. C. P. No. 2, Phila. Co., Sept. T., 1916, No. 84.

*E. Spencer Miller*, for libellant; *Frank A. Harrigan*, for petitioner.

GORDON, JR., J., July 16, 1924.—On Aug. 15, 1916, the libellant in this case filed his libel in divorce alleging desertion, and subpœna issued thereon. To this subpœna a return of *n. e. i.* was made, and on Jan. 12, 1917, an *alias* subpœna was issued, to which a like return was made. On May 28, 1917, an order of publication in divorce was issued and return of publication duly made by the Sheriff of Philadelphia County. On Jan. 21, 1918, a master was appointed. The service having been secured by publication, the master, in compliance with the rules of court, on Feb. 1, 1918, summoned the libellant before him and examined him under oath for the purpose of ascertaining the residence of the respondent or her children, so that he might be enabled to serve upon the respondent or upon them a notice of the time and place fixed by him for hold-

Walton *v.* Walton.

ing a meeting for taking testimony under his appointment. The libellant testified, in substance, that he did not know where his wife was living at the time, and was unable to give the master information which would enable him to communicate either with the respondent or with her son or daughter by this marriage. We may refer particularly to the following questions addressed by the master to the libellant and his answers to them: "Q. There is no means by which I can communicate with the children; if I were to address the children what would be their address? A. I do not know how to find my son, and, without having the address of my daughter, I certainly could not communicate with her. Q. When did you last communicate with her? A. I could not remember when it was. Q. You can't aid me in any way by the names of people in reaching your wife? A. I do not know whom to refer you to."

The preliminary meeting at which these questions were put to the libellant and thus answered by him was held in accordance with the regular practice of this county, and under Rule No. 180 of our Rules of Court, which reads as follows:

"180. Where there is no return of personal service and no appearance is entered for the respondent, the master shall, before proceeding to take the testimony upon the merits of the case, endeavor by every means available to give actual notice to the respondent of the application for the divorce, the reasons therefor, the name and address of the master, and the time and place of taking testimony. To that end he shall endeavor to ascertain the address of the respondent and the names and addresses of his or her near relatives and of others who would be likely to know his or her address, by an examination of such relatives and others and of the libellant, by personal inquiry within the county or by registered letters outside of it, and by any and every other means which he shall deem conducive to the purpose. If he fail to give actual notice to the respondent, he shall ·publish such notice once a week for four full weeks in such newspapers as in his opinion will be most likely to be seen by the respondent. Thereafter the master may proceed to take the testimony upon the merits of the case; but he shall not file his report until he is satisfied that all means available have been used to give actual notice to the respondent, and the efforts to that end shall be set forth in his report."

Being thus unable to discover any means of communicating with the respondent, the master advertised the time and place fixed for holding the first meeting. After the taking of testimony, the master filed his report on April 12, 1918, recommending that a divorce be granted to the libellant on the ground of desertion. The report was approved on April 22, 1918, and on Jan. 27, 1919, the final rule for divorce was made absolute and the decree entered.

The libellant died on Feb. 22, 1920. At this time the respondent did not know she had been divorced in this proceeding. She knew nothing respecting the proceeding or the entry of the decree until her son informed her of the fact subsequent to his father's death.

On Sept. 21, 1921, the respondent presented her petition for the vacation of the decree of divorce, alleging that it had been secured secretly and by fraud upon the part of the libellant, in that he had testified falsely before the master touching his knowledge of the respondent's whereabouts, and the whereabouts of her children, and had fraudulently prevented the master from giving notice of the pendency of the proceedings to the respondent, and thus fraudulently secured a secret and false divorce. A rule to show cause was granted upon this petition, and after the taking of depositions and consider-

ation, we made the rule absolute, vacating and annulling the final decree in divorce entered on Jan. 27, 1919. The rule was granted upon Lester R. Walton, administrator of the deceased libellant's estate. The depositions clearly show that the libellant deliberately deceived the master in his testimony at the preliminary hearing. He falsely pretended that he knew of no way to communicate with his son, his daughter or his wife. The truth is that the libellant knew how his son could be communicated with, knew how his daughter could be communicated with, knew her addresss in New York, had communicated with her on May 31, 1917, and through her, at least, could and did communicate with his wife from time to time.

The purpose of Rule 180 is to prevent the securing of divorces by libellants secretly and without the knowledge of respondents. It is evident from a reading of his testimony before the master that this libellant skillfully evaded any disclosure of facts which would give his wife an opportunity to appear and defend against his charges. He deceived the court by deceiving its representative, and thus prevented proper service of notice of the proceeding upon his wife. This is fraud which goes to the very foundation of the proceeding. It is not deception or falsehood touching the issues of fact in the case, which the other party, if notified, could have met and answered. It goes to jurisdictional facts and vitiates the whole proceeding. Fraud of this character cannot be tolerated, and it is our duty to protect the purity of our proceedings by revoking a decree brought about by such fraud: Boyd's Appeal, 38 Pa. 241.

It is earnestly contended by the libellant's administrator that this decree should not be vacated, notwithstanding the evidence of fraud on the part of the libellant, because the respondent has failed to answer the libellant's testimony relating to the ground of divorce and to show, either in her petition or depositions, that had she appeared and defended she would have had a good defence to the action. In support of this contention, the administrator urges upon us the cases of Taylor v. Taylor, 52 Pa. Superior Ct. 388, and Boyer v. Boyer, 43 Pa. C. C. Reps. 593. Neither of these cases rules the question before us. In Taylor v. Taylor, Judge Henderson, speaking for the Superior Court, points out that the respondent had knowledge of the proceeding, filed an answer to the libel and received notice of the final rule. She, therefore, appeared in the case, and the court held that, having done so, she must show that she had a defence to present which she was deprived of presenting by the fraud and connivance of the libellant and his attorney. In the case before us the respondent knew nothing of the proceeding until after the libellant's death. She did not appear in any way in the case. She was kept out of court altogether by her husband's fraud. Boyer v. Boyer may be distinguished from the case under consideration. In it the libellant did nothing affirmative to prevent his wife from receiving notice of the proceeding. He merely failed to notify the sheriff or his attorney of the respondent's presence in a house in the City of Lancaster, so that personal service could be secured upon her. This mere inaction is entirely different from the perjury of the libellant in the present case, and his active concealment of her address and that of her children from the master. If the decision in the Boyer case, which was ruled upon the case of Taylor v. Taylor, is intended to decide more than the particular facts before the court, we cannot follow its reasoning. Indeed, it is in conflict with other decisions of our courts. See King v. King, 28 Pa. C. C. Reps. 313; Wanamaker v. Wanamaker, 2 Pears. 166. The case before us is clearly ruled by Boyd's Appeal, 38 Pa. 241.

The libellant himself was the only witness in support of his charge of desertion. His testimony at the preliminary meeting before the master has been

Walton v. Walton.

shown to be false, and he has been disclosed as a deliberate perjurer. The case is not, therefore, one in which disinterested witnesses testified to an undoubted desertion by the respondent which it is improbable she could contradict. The perjurer supported his application for divorce by his own testimony exclusively, and we would apply without hesitation the doctrine of *"falsus in uno falsus in toto,"* and refuse to believe his uncorroborated testimony in any particular. This case is tainted with fraud in its very inception, and we cannot allow a decree based upon it to stand.