Cline's Estate.

Argued April 22, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

310

*Jas. L. Kennedy,* for appellants.

*Z. T. Silvis,* for appellees.

OPINION BY KELLER, P. J., September 29, 1937:

William Fiscus Cline, of Greensburg, Westmoreland County, died on April 6, 1924, testate. By his will, dated March 28, 1924, he created, inter alia, a spendthrift trust for his son, Omer D. Cline, which the executor was to hold and invest, and pay the income therefrom to the said Omer during his lifetime, and upon his death the principal was to go "to his lawful issue; but in case he shall die without leaving such issue living at the time of his death, then said principal shall be paid to my collateral heirs."

Omer D. Cline died on January 26, 1936. The appellants, claiming to be his lawful issue, appeared at the audit of the trustee's account and asked that the net balance of the principal, as shown therein, be awarded them. The auditing judge found from the evidence that they were not lawful issue of Omer D. Cline and distributed the principal of the trust fund among the testator's collateral heirs. Exceptions to this adjudication were dismissed by the court and this appeal followed. We are of opinion that under the evidence in the record the case was rightly decided.

Appellants are children of Rachel May Irwin Smith, now calling herself, Rachel May Cline. As Rachel May Irwin she was married in Greensburg on June 8, 1908 to Jesse Smith. There can be no question of this marriage. It was proved by the records in the Register's Office as well as by her and his admission. They lived for about a year in Export, Franklin Township, Westmoreland County, with her parents, who had formally consented to the marriage, and then she left him and went to live with Omer D. Cline. She admitted that she never obtained a divorce from Jesse Smith. Smith was in court at the audit and she identified him as her

husband. She testified that Omer Cline, with whom she lived after 1909, "always said if he got the money I would get a divorce and we would get married—never could get that far ahead." She kept house for Cline, who lived on a farm near Export, belonging to his father, and had six children by him, the oldest having been born in Export in 1916. In 1917 she moved with Cline to Allegheny County. She saw her husband, Jesse Smith, in Export in 1917, but never saw him after she moved away until she saw him in court. She never wrote to him nor made any inquiries about him during that period. He continued to reside in the same neighborhood and was residing there when subpoenaed for the audit.

She lived with Cline in Allegheny County until he died. She was known as Mrs. Cline and passed for his wife. But the relation was meretricious at the outset and remained such until he died. See *Stevenson's Est.*, 272 Pa. 291, 297, 116 A. 162; *McDevitt's Est.*, 280 Pa. 50, 124 A. 294; *Patterson's Est.*, 237 Pa. 24, 85 A. 75; *Hunt's App.*, 86 Pa. 294, 297; *Grimm's Est.*, 131 Pa. 199, 18 A. 1061. Both of them knew that she had a husband living when she came to Cline to live with him as his housekeeper and became his mistress. That husband is still alive. He has always lived in the same neighborhood where they first lived together. He could have been found any time he was wanted. It was she and Cline who moved away to another neighborhood in a different county.

With a husband living, it was, of course, impossible for her to contract a valid legal marriage with Cline, either by a formal ceremony or by common law agreement, in *verba de praesenti*, (*Murdock's Est.*, 92 Pa. Superior Ct. 275) to live together as husband and wife. Cohabitation and reputation do not constitute a marriage: *Murdock's Est.*, supra, p. 277; *Craig's Est.*, 273 Pa. 530, 532, 117 A. 221; *Stevenson's Est.*, 272 Pa. 291,

116 A. 162; *Yardley's Est.,* 75 Pa. 207, 211; *Hunt's App.,* 86 Pa. 294; *Grimm's Est.,* 131 Pa. 199, 18 A. 1061; *Bisbing's Est.,* 266 Pa. 529, 109 A. 670; and where a woman is incapable of contracting a valid marriage, because she already has a husband living, from whom she is not divorced, no amount of cohabiting with another man, no amount of reputation that they are married, no amount of holding themselves out to the public as man and wife, can make the relation thus wrongfully entered into a legal one of husband and wife, during the lifetime of her lawful, undivorced husband, nor constitute the children born of such a relation the lawful issue of their father.

We may accept as true her statement that she never had relations with any man but Cline after she became his housekeeper and that Cline during all that period had nothing to do with any other woman, but, in the circumstances of this case, that did not make them husband and wife. We assume, as stated by counsel, that she has been a good mother to her children and that they have been well brought up and are as well behaved as any children could be, but the sins of the parents are still visited on the children, and sympathy for their condition cannot alter their legal status.

It is too plain to need citation of authority that while Jesse Smith was living and undivorced his wife could not become the lawful wife of another man, nor the children born of such unlawful relation be their lawful issue. But we refer to *McLaughlin's Est.,* 314 Pa. 574, 172 A. 107; *Morris v. McKeesport C. & C. Co.,* 99 Pa. Superior Ct. 112; *Edwards v. Enterprise Mfg. Co.,* 283 Pa. 420, 129 A. 449; *Com. v. McDermott,* 75 Pa. Superior Ct. 408; *Com. v. Phillips,* 83 Pa. Superior Ct. 213; *Hantz v. Sealy,* 6 Binney 405, 408; *Com. v. Stump,* 53 Pa. 132; *Tholey's App.,* 93 Pa. 36; *Bisbing's*

*Est.*, 266 Pa. 529, 109 A. 670; *McDevitt's Est.*, 280 Pa. 50, 124 A. 294.

The cases relied on by the appellants' counsel are distinguishable on their facts. *McCausland's Est.*, 213 Pa. 189, 62 A. 780, which is chiefly relied on, presented an entirely different situation. In that case, the father and mother of a child, six weeks after its birth, agreed with each other in Colorado to become husband and wife and to live together in that relation until parted by death, and thereafter continued to live together as man and wife, holding themselves out to the world as such, and it was held that the contract of marriage thus entered into legitimated the child, not only in Colorado, but also in Pennsylvania. In that case the woman had previously been married to a man who disappeared and was not again heard of. It was held that after seven years the presumption arose that he was dead, but there was no presumption as to the time when, during the seven years, his death actually occurred, and if his wife married again, even within the seven years, and there was no proof of the actual date of the death, the presumption was in favor of legitimacy and in favor of the second marriage as not having occurred prior to the death of the absent husband. The differences between that case and this one are apparent. Here Smith, the lawful husband, did not disappear. He has remained in the neighborhood where he lived when he married appellants' mother, and is still living. She and Cline removed to another county. Their relation was meretricious at the start. Both knew of and spoke of her getting a divorce so they could be married; but it was never done. The relation necessarily remained meretricious to the date of Cline's death, for Mrs. Smith had a husband living during all that time and could not contract a valid marriage with Cline or anyone else, as long as her husband lived and was not divorced from her. No divorce was ever ob-

314

tained. She remained the wife of Smith and was not legally capable of becoming Cline's wife. The children born of such a meretricious relation necessarily are illegitimate.

The decree is affirmed at the costs of the appellants.