Loiacono *v.* Loiacono et al., Appellants.

Argued March 22, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT, J., absent).

*Leighton R. Scott,* with him *Hogan & Scott,* for appellants.

*Chauncey D. Howell,* for appellee.

OPINION BY WOODSIDE, J., September 28, 1955:

This is an appeal from a declaratory judgment entered by the court below in which it was adjudged that the divorce which Anthony Loiacono obtained from Rose Loiacono in Nevada was void within the Commonwealth of Pennsylvania, and that the marriage of Anthony and Dorothy Ida Brittain entered into after the divorce was also void within this Commonwealth.

The petition for a declaratory judgment was filed by Rose Loiacono against Anthony Loiacono and Dorothy Ida Brittain under the provisions of the Uni-

form Declaratory Judgments Act of June 18, 1923, P. L. 840 its amendments and supplements, 12 PS §§831-853. Such proceedings are permissible under the terms of this act to establish her marital relationship with the man she married: *Melnick v. Melnick*, 147 Pa. Superior Ct. 564, 25 A. 2d 111 (1942).

A trial was held before the lower court in accordance with the practice for trials in equity cases. See section 6 of above act, 12 PS §852.

The court made a number of findings of fact about which there is no serious complaint by the defendants who appealed from the judgment.

The only question presented on appeal is whether the delay of the plaintiff "in bringing the action indicates such bad faith on (her) part so as to make her guilty of laches and preclude the right to judicial relief."

There is no dispute over the following facts found in substance by the court below:

Anthony and Rose Loiacono were married on February 22, 1930 in Northampton County, Pennsylvania, and separated about February 1, 1934. One daughter, now an adult, was born to the marriage. On May 27, 1940 Anthony filed a libel in divorce a.v.m. in Northampton County which after petition and order was discontinued September 6, 1945. A few days later Anthony and Dorothy went to Reno, Nevada. On October 23, 1945 Anthony filed a complaint in divorce against Rose in Nevada. On November 27, 1945 a summons issued out of the Nevada court was served on Rose in Phillipsburg, New Jersey. She did not appear in the Nevada divorce proceedings either in person or by attorney, and never authorized any person or attorney to appear for her therein. The parties never lived together in Nevada; Rose never resided there; she was never personally or otherwise served

there, and the alleged cause of action or alleged grounds for divorce which were the basis for the proceedings arose in Pennsylvania and not in Nevada.

On November 27, 1945 an absolute decree in divorce was granted Anthony by the Nevada court. On the same day Anthony and Dorothy were married in Reno, Nevada, and on the same day they left the state of Nevada, returning to Northampton County, Pennsylvania. There they have continued to reside as husband and wife to the present time. They have three children, the first born November 27, 1948 and the last born since the petition for declaratory judgment was filed.

On February 4, 1946 the plaintiff-wife obtained an order in the Court of Quarter Sessions of Northampton County against Anthony in the amount of $85 per month for the support of herself and daughter. On December 2, 1948 the order was increased from $85 to $100 per month. At the time the lower court heard this case the defendant was still paying the order. On January 5, 1949 upon information of Rose, Anthony was arrested for adultery and bastardy and Dorothy for fornication. Both were acquitted.

From the time Anthony and Dorothy returned from Nevada they resided in Northampton County, Pennsylvania, and Rose resided in Phillipsburg, New Jersey. Although in another state, Phillipsburg is only across the Delaware River from Anthony's residence and business place. For the purpose of this case we shall assume that from the time Anthony and Dorothy returned from Nevada in late 1945 until this action was brought on May 22, 1952, Rose knew where Anthony and Dorothy were residing and that they were living together as husband and wife.

Under Article IV, section 1 of the United States Constitution, known as the "Full Faith and Credit

Clause," a Nevada decree in divorce must be respected in Pennsylvania where the Nevada court's finding of domicile is not questioned, even though the defendant spouse had neither appeared nor been served in that state. *Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279 (1942).

But a judgment in Nevada is conclusive upon its merits in Pennsylvania only if the Nevada court had power to pass on the merits, or in other words, had jurisdiction to render the judgment. Jurisdiction, or judicial power to grant a divorce, is founded on domicile. *Williams v. North Carolina (2),* 325 U. S. 226, 229, 65 S. Ct. 1092, 89 L. Ed. 1577 (1945).

The Nevada decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded. As to the truth or existence of a fact, like that of domicile, upon which depends the power to exert judicial authority in another state, Pennsylvania has a right to ascertain the truth or existence of that crucial fact in its own courts. *Williams v. North Carolina (2),* supra, p. 230.

The Pennsylvania courts are required upon authority of *Esenwein v. Commonwealth ex rel. Esenwein,* 325 U. S. 279, 280, 65 S. Ct. 1118, 89 L. Ed. 1608 (1945), to accord prima facie validity to the Nevada decree. Thus the burden is on the wife-plaintiff of impeaching the foundation of the Nevada decree on the jurisdictional prerequisite of bona fide domicile.

There is no doubt she met this burden. The appellants do not here question the sufficiency of the evidence to support the findings of the lower court which led it to the conclusion that the Nevada court did not have jurisdiction.

The appellants' only contention is that plaintiff wife was guilty of laches in that she did not bring this

action until 6½ years after the divorce, and marriage of Anthony and Dorothy, in Nevada.

They cite no case in which a Pennsylvania appellate court ever held a spouse guilty of laches in a proceeding to declare void a decree in divorce because of lack of jurisdiction.

In setting aside the divorce decrees of the courts of our own state for lack of jurisdiction or for fraud committed upon the court, the time between the entry of the decree and the bringing of the action to open it or set it aside has not been considered important. "The courts have power to set aside a decree of divorce obtained by fraud and imposition, notwithstanding the lapse of years." *Fleming v. Fleming,* 83 Pa. Superior Ct. 554, 556 (1924).

In *Given v. Given,* 25 Pa. Superior Ct. 467, 470 (1904) this court said a decree in divorce could be vacated for want of jurisdiction fifty-nine years after it was entered.

A decree in divorce was vacated by the Supreme Court twelve years after it was entered. *Fidelity Insurance Company's Appeal,* 93 Pa. 242 (1880). Decrees in divorce have been set aside after the libellants died. *Boyd's Appeal,* 38 Pa. 241 (1861) ; *Fidelity Insurance Company's Appeal,* supra.

On the question of laches in a case similar to the instant case the late President Judge KELLER of this court had the following to say:

"We are of opinion that the petitioner was not guilty of laches such as to deprive him of his right to a judgment declaring his marital status. There is no statute of limitations, or presumption of discharge, as to marital status or the marriage relation. In Cline's Est., 128 Pa. Superior Ct. 309, 194 A. 222, a married woman went to live with a man not her hus-

band and cohabited with him and was recognized by him as his wife for twenty-six years, until his death, bearing him six children, her lawful husband being alive and undivorced all the time. The passing of the years did not change her marital status nor make her relationship with her paramour lawful, or her children by him legitimate, notwithstanding her husband took no steps to preserve his marital relation. In the celebrated case of Haddock v. Haddock, supra, the husband left his wife in New York in 1868, settled in Connecticut in 1877, where he obtained a divorce in 1881, based on constructive, not actual, service. The wife brought an action of divorce from bed and board in New York in 1899, thirty-one years after he left her and eighteen years after his Connecticut divorce, and obtained personal service on him, and the decree of the Supreme Court of New York granting such divorce and alimony, affirmed by the Court of Appeals, was affirmed by the Supreme Court of the United States." *Melnick v. Melnick,* 147 Pa. Superior Ct. 564, 580, supra.

In the instant case the wife obtained a court order in Pennsylvania for her support. The record before us shows that the trial judge told Anthony at that time that his Nevada divorce was not worth the paper it was written on. Of course, this gratuitous statement of the judge has no legal significance, except to show that at that time, Anthony *knew* that Rose received an order on the theory that their marital status had not been affected in Pennsylvania by the Nevada divorce. He knew Rose did not recognize the Nevada divorce as binding. She never acted upon the theory that she was divorced as did the petitioner in *Nagle v. Nagle,* 43 Pa. Superior Ct. 442 (1910).

It is true that Pennsylvania courts have referred to laches as one of the reasons for refusing relief to an

applicant to set aside a divorce decree but only where jurisdiction is not involved such as in *Nagle v. Nagle*, supra; *Catts v. Catts,* 35 Pa. Superior Ct. 293 (1908); *Field v. Field,* 67 Pa. Superior Ct. 355 (1917).

Passing the question of whether laches can *ever* apply to a divorce case where it has been established that the court entering the decree lacked jurisdiction, we think it is clear from the cases cited in this opinion that the doctrine of laches is not applicable to the facts of this case.

We are not unmindful of the effect of this decision upon the children of Anthony and Dorothy. But the law is well settled that neither the remarriage of Anthony nor the birth of children to him can have any bearing upon the question here before us. This subject was considered by two eminent Pennsylvania jurists, almost a century apart. Their statements, which we have combined, have relevancy here: "It may seem an arbitrary act to expunge a sentence of divorce with a stroke of the pen, bastardize after-begotten children, involve an innocent third person in legal guilt, and destroy rights acquired in reliance on a judicial act, which was operative at the time;" but, "the sins of the parents are still visited on the children, and sympathy for their condition cannot alter their legal status."[1]

Judgment affirmed.

---

[1] The first part by Chief Justice GIBSON in *Allen v. Maclellan*, 12 Pa. 328, 330 (1849), and the second by the late President Judge KELLER in *Cline's Estate*, 128 Pa. Superior Ct. 309, 312, 194 A. 222 (1937).