Sargent *v.* Sargent, Appellant.

Argued March 26, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Wallace H. Webster, Jr.,* with him *Perkin, Webster & Christie,* for appellant.

*Charles J. Fonzone,* with him *Martin J. Karess,* and *Walker, Thomas & Karess,* for appellee.

OPINION BY HOFFMAN, J., June 14, 1973:

In this appeal, we must decide whether the lower court erred in finding a Mexican divorce decree devoid of extraterritorial effect and adjudging appellant liable for the support of the wife-appellee in the amount of twenty dollars a month.

Loretta C. Sargent, the appellee, filed the instant action in support for herself and two children on March 2, 1972, in the Northampton County Court of Common Pleas. A full hearing was held before the Honorable Michael V. Franciosa on July 10, 1972. The following facts were adduced at this hearing:

Appellant and appellee were married on July 4, 1955. There were two children born of this marriage, both of whom have always resided with the appellee. Sometime between October 1, 1967 and October 16, 1967, the parties separated, appellee leaving the marital residence at 1033 North Ott Street in Allentown. On October 17, 1967, appellant left the residence and the State, and traveled to Mexico. On October 23, 1967, appellant instituted a suit for "Necessary Divorce against his wife in the First Civil Court of the Bravos District, State of Chihuahua, Republic of Mexico." Appellee was personally served with process on October 30, 1967 in Pennsylvania. She did not appear at the

proceedings. On November 21, 1967, appellant obtained a decree in divorce from the Mexican court.

On November 19, 1967, appellant obtained employment at Lockheed Aircraft Corporation in Sunnyvale, California, where he took up residence. Appellant then traveled to Allentown, Pennsylvania, where he visited with prospective in-laws and returned with Virginia Webster to Sunnyvale, where on December 9, 1967, Miss Webster and appellant were married. Appellant continued to reside with his second wife in Sunnyvale until May 30, 1969, at which time he was transferred to Lockheed's subsidiary, Lockheed Electronics, in Plainfield, New Jersey, where he has continued his employment to the present date. Appellant and his second wife moved to Stirling, New Jersey, where they lived until November, 1970. They then moved to 2712 Auburn Avenue in Easton, where they and two children born of this second marriage now live.

Appellee discovered appellant was living in California and promptly filed a support petition for herself and her two children. The California Superior Court, on August 1, 1968, ordered the appellant to pay $100.00 per month for the two children only, making no provision for the support of the first wife. The record discloses that appellant has faithfully made monthly payments through the California court, and is currently not in arrears.

When appellant moved, appellee filed a similar proceeding in New Jersey, which was dismissed without prejudice on May 24, 1971 for want of prosecution. The instant suit in the Northampton County Court resulted in an Order of the Court dated November 6, 1972. The order decreed that "the Mexican Divorce decree having been found devoid of extraterritorial effect for the reasons set forth . . . Defendant is adjudged liable for support of the Plaintiff . . . at the rate of twenty ($20.00) dollars per month." The amount set by the

California court for the support of the children was not modified. It is from the Order of Court that this appeal is taken.

The Full Faith and Credit Clause binds only the States of the Union and does not apply to decrees of the courts of foreign countries. *Aetna Life Insurance Co. v. Tremblay*, 223 U.S. 185 (1912). "Mexico is a sovereign state and the judgments of its courts are entitled to the respect everywhere accorded the judgments of the courts of sovereign states until those judgments are invalidated in the proper manner in the courts of another jurisdiction. 'Foreign judgments are recognized and enforced in this country because of the comity due by one nation to another and to its courts and decrees': 15 R.C.L., page 907, section 388; Hilton v. Guyot, 159 U.S. 113. It is true that a foreign divorce may be attacked collaterally by the defendant spouse where his or her rights are involved. . . . The right to impeach collaterally a decree of divorce made in another state by showing fraud or want of jurisdiction has been frequently recognized." (Citations omitted.) *Commonwealth ex rel. Yarnell v. Yarnell*, 313 Pa. 244, 250-251, 169 A. 370 (1933). This Commonwealth, for the most part, has refused to recognize a Mexican divorce in a situation where a defendant spouse has not joined in the Mexican proceeding. *Commonwealth ex rel. Allison v. Allison*, 151 Pa. Superior Ct. 369 (1943); *Commonwealth ex rel. v. Manzi*, 120 Pa. Superior Ct. 360 (1936); *Commonwealth v. MacMaster*, 88 Pa. Superior Ct. 37 (1926). Our Supreme Court has, however, afforded recognition of a Mexican divorce where the plaintiff was actually domiciled in Mexico and the cause of divorce did not offend the policy of the Commonwealth. *Commonwealth ex rel. Yarnell v. Yarnell*, supra.

An absolute prerequisite to judicial recognition of an out-of-state divorce is that the plaintiff must have

resided in the state or country for a minimum period of residency as determined by local authority *and* that the residency be accompanied by "domiciliary intent", i.e., an intent to remain in the foreign jurisdiction. *DiMilia v. DiMilia,* 204 Pa. Superior Ct. 188, 203 A. 2d 382 (1964) ; *Fishman v. Fishman,* 167 Pa. Superior Ct. 428, 74 A. 2d 682 (1950). This requirement is jurisdictional and cannot be waived by the acts of the parties. *Yohey v. Yohey,* 205 Pa. Superior Ct. 329, 208 A. 2d 902 (1965).

In the instant case, there is no doubt that the plaintiff-appellant went to Mexico for the express purpose of obtaining a divorce, and that he had no intention to remain in Mexico beyond the period necessary to come under the jurisdiction of the Mexican courts.[1] Furthermore, the evidence discloses that appellant took up residence in California a month after he left the marital domicile. There, on November 19, 1967, prior to the award of the divorce decree from the Mexican court, appellant obtained employment with Lockheed. The record is, therefore, patently devoid of evidence of domiciliary intent with regard to appellant's brief residence in Mexico. Having failed to demonstrate sufficient "domiciliary intent" in Mexico, our court on

---

[1] The plaintiff testified in the following manner regarding his trip to Mexico: "Q. How long were you in Mexico? A. Approximately a week. Q. A week. Did you have employment in Mexico? A. No, I did not. Q. What was the purpose of your trip to Mexico? A. My purpose was to establish residence in the State of Mexico for obtaining a divorce. Q. And only for that purpose? A. For Mexico? Q. Yes. A. That's correct—other than economical reasons. I couldn't establish residence in another state because of economical reasons. Q. Because of economical reasons? A. Yes. It's too expensive. Q. Too expensive. So you went to Mexico, realizing that you would leave as soon as the minimum residence requirements were established; is that correct, sir? A. That I would leave Mexico? Q. Yes. A. That's correct. Q. Did you ever intend to remain there indefinitely? A. In Mexico? Q. Yes. A. No, I did not."

collateral review could properly find the foreign decree invalid for want of jurisdiction.

Appellant argues that, even should his divorce decree be subject to attack, his first wife, the appellee herein, should be estopped from raising the validity of the decree by reason of laches. As a broad general rule, the validity of a divorce decree cannot be questioned by the spouse who obtains it, and a husband or wife who remarries on the strength of the divorce is estopped to deny its validity. *Commonwealth v. Case*, 200 Pa. Superior Ct. 200, 189 A. 2d 756 (1963); *Commonwealth ex rel. Allison v. Allison*, supra. The doctrine of laches has uniformly been applied to those situations where the party seeking to attack the decree himself participated in a collusive divorce. *Romanski Estate*, 354 Pa. 261, 47 A. 2d 273 (1946).

In this jurisdiction, however, laches has never been a defense in a proceeding to declare void a decree in divorce for want of jurisdiction, where the moving party did not actively take part in the obtaining of the divorce. See, *Loiacono v. Loiacono*, 179 Pa. Superior Ct. 387, 116 A. 2d 881 (1955). Quoting *Melnick v. Melnick*, 147 Pa. Superior Ct. 564, 580, 25 A. 2d 111 (1942), the Court in *Loiacono*, supra at 392, stated: "There is no statute of limitations, or presumption of discharge, as to marital status or the marriage relation. In Cline Est., 128 Pa. Superior Ct. 309, 194 A. 222, a married woman went to live with a man not her husband and cohabited with him and was recognized by him as his wife for twenty-six years, until his death, bearing him six children, her lawful husband being alive and undivorced all the time. The passing of the years did not change her marital status nor make her relationship with her paramour lawful, or her children by him legitimate, notwithstanding her husband took no steps to preserve his marital relation. In the celebrated case of Haddock v. Haddock, supra, the husband

left his wife in New York in 1868, settled in Connecticut in 1877, where he obtained a divorce in 1881, based on constructive, not actual, service. The wife brought an action of divorce from bed and board in New York in 1899, thirty-one years after he left her and eighteen years after his Connecticut divorce, and obtained personal service on him, and the decree of the Supreme Court of New York granting such divorce and alimony, affirmed by the Court of Appeals, was affirmed by the Supreme Court of the United States."

The instant case should likewise permit a support action by the first wife, despite the fact that the Mexican divorce was obtained over five years ago. Appellee was not a party to the Mexican divorce. She was served constructively, and did not make an appearance or answer process. She attempted on two prior occasions to institute support actions in California and New Jersey. While she obtained an order of support with respect to the minor children, not until the order of Northampton court, did appellee have a prior determination as to her own right of support.

Appellant admits that he went to Mexico for the sole purpose of obtaining a divorce, and that at no time did he intend to remain in Mexico beyond the period necessary to come within the court's jurisdiction. Under no pretext can the Mexican divorce gain validity as against the collateral attack of the absent spouse.

As we find no indication of collusive participation on the part of appellee, laches should not be invoked to estop appellee's claim. Despite the fact that appellant has remarried and had two children by the second marriage, we cannot breathe life into the Mexican decree where such vitality is lacking.

Order of the court below is affirmed.