## Miller v. Miller

340

*Thomas J. Evans*, for petitioner.
*Cleveland G. Hummel*, for respondent.

MYERS, *P.J.*, October 25, 1976—Dorothy R. Miller (hereinafter called petitioner) filed a petition for declaratory judgment, wherein she alleged that a divorce decree obtained from her by Drue W. Miller (hereinafter called respondent) in the state of Nevada was invalid. A hearing was held before this court, and the matter is now before us for final disposition.

Under Article IV, §1, of the United States Constitution, commonly known as the Full Faith and Credit Clause, a divorce decree issued in another state must be respected in Pennsylvania so long as the other state court's finding of domicile in that state is not contested: Williams v. North Carolina, 317 U.S. 287 (1942) (Williams I). However, a judgment in a foreign court is conclusive upon its merits in Pennsylvania *only* if the foreign court has jurisdiction to render the judgment.

Jurisdiction, i.e., judicial power to grant a divorce, is founded on domicile: Williams I; Williams v. North Carolina, 325 U.S. 226 (1945) (Williams II); Esenwein v. Com. ex. rel. Esenwein, 325 U.S.

279 (1945). Therefore, a foreign decree of divorce is a conclusive adjudication, in Pennsylvania, of everything except the jurisdictional facts upon which the decree is founded: Stambaugh v. Stambaugh, 458 Pa. 147, 329 A. 2d 483 (1974); Koolish v. Koolish, 214 Pa. Superior Ct. 304, 257 A. 2d 680 (1969).

Domicile is the place where a person has his true, fixed, permanent home: Dorrance's Estate, 309 Pa. 151, 163 Atl. 303 (1932). To establish a domicile in a foreign jurisdiction, an individual must reside in the foreign state or country for a minimum period of time, as determined by local authorities. In addition, the residency must be accompanied by "domiciliary intent," i.e., an intent to remain in the foreign jurisdiction permanently: Sargent v. Sargent, 225 Pa. Superior Ct. 1, 307 A. 2d 353 (1973); Com. ex rel. Achter v. Achter, 167 Pa. Superior Ct. 603, 76 A. 2d 469 (1950).

In the instant case, both parties agree that respondent resided in Nevada for the minimum period of residency. The issue, therefore, is whether respondent intended to establish permanent residency in Nevada, or whether he merely went to Nevada on a temporary sojourn for a particular purpose, such as obtaining a divorce or avoiding a support order: Sargent; Com. ex rel. Meth v. Meth, 156 Pa. Superior Ct. 632, 41 A. 2d 752 (1945).

In determining if respondent possessed domiciliary intent, this court must evaluate all of the facts and circumstances, taken together. Moreover, in making its determination, the court must look beyond the "superficial indicia" of domiciliary intent, in an attempt to discover the true substance of the matter: Com. ex rel. McVay v. McVay, 383 Pa. 70, 117 A. 2d 144 (1955).

In the hearing before this court, respondent testified that he left Pennsylvania on April 7, 1974, and that he arrived in Reno, Nevada on April 9, 1974. He rented an apartment in Reno, had a telephone installed, received a Nevada driver's license, and secured Nevada registration for his automobile. He was employed by construction firms in Nevada until he left the state on August 23, 1974.

According to respondent, he first consulted a Nevada lawyer with regard to obtaining a divorce from petitioner on June 10 or 11, 1974. The divorce became final on July 18, 1974. Respondent maintains, however, that he did not go to Nevada simply for the purpose of obtaining a divorce. He also claimed that—at the time he left Pennsylvania — he did not ever intend to return to this Commonwealth.

On the other hand, respondent admitted that he left all of his furniture at his house in Bloomsburg. Also, although no one was living in the house from about April 22 to the time respondent returned, he made no attempt to rent the premises.

Furthermore, petitioner testified that she told respondent that she planned to bring a support action against him; that respondent retorted that he would obtain a Nevada divorce to avoid the support obligation; that petitioner was in fact granted a support order by this court on March 26, 1974, in the amount of $75 per month; and that respondent left for Nevada twelve days later. Also, petitioner testified that when respondent returned to Bloomsburg, he resumed his former employment at an excavating business which respondent had sold to his son for the sum of one dollar in September of 1973.

In light of the testimony presented at the hearing, we have no difficulty in concluding that respondent went to Nevada solely for the purpose of obtaining a divorce. Although respondent testified that he did not intend to return to Pennsylvania and that he did not go to Nevada just to divorce his wife, we believe that the circumstances in their totality disprove his contention.

Respondent departed for Nevada only a few days after the support order was issued; he commenced divorce proceedings just a few weeks after he met the Nevada legal residency requirement, and he returned to Bloomsburg only 32 days after the divorce became final.

A party seeking to attack a foreign divorce decree has a "heavy burden." Stambaugh. In the instant case, we conclude that petitioner clearly has met that burden.

Therefore, this court holds that respondent did not establish domicile in Nevada. Thus, respondent's Nevada divorce is void and without legal effect.

Accordingly, we enter the following

## ORDER

And now, October 25, 1976, it is hereby ordered and decreed that the Nevada divorce obtained by respondent is null and void, and that the marriage heretofore contracted by petitioner and respondent continues in full force and effect.