O’BRIEN, J.,
Plaintiff, James A. Taylor, and defendant, Carol A. Taylor, were married on April 14, 1965. Plaintiff husband filed a complaint on September 2, 1986 seeking a divorce on grounds of either irretrievable breakdown of the marriage or indignities to the person. Following two evidentiary hearings, a special master appointed by the court filed a report on September 21, 1987 recommending a divorce on the ground of indignities and equitable distribution of marital property. Neither party filed exceptions to the master’s recommendation and on October 13, 1987 this court entered a decree of divorce incorporating the master’s recommendations with respect to equitable distribution. No appeal was filed from that decree, by either party.
The equitable distribution decreed by the court provided for the division of jointly owned real property in Stroud Township, Monroe County, Pennsylvania. Defendant wife received 1.77 acres which included thereon the marital domicile, swimming pool and outbuildings. Plaintiff husband received the remaining unimproved acreage. On June 26, 1990, upon petition of plaintiff, this court issued a rule to show cause upon defendant why she should not execute the deeds to carry out the equitable distribution of the marital realty. On August 7, 1990, in the absence of a timely answer by defendant, the rule was made absolute. On August 13, 1990, defendant wife filed a petition requesting the court to vacate the divorce decree, to which plaintiff filed a timely answer. Plaintiff husband countered by filing a petition requesting the court to hold defendant *279 wife in contempt for failure to comply with the order of August 7, 1990. All issues were joined for argument and following the submission of briefs and oral argument the matter is now before the court for disposition.
The Divorce Code provides in pertinent part as follows:
“A motion to open a decree of divorce or annulment may be made only within 30 days after entry of the decree and not thereafter. Such motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or because of a fatal defect apparent upon the face of the record, must be made within five years after entry of the final decree. Intrinsic fraud is such as relates to a matter adjudicated by the judgment, including peijury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.” 23 Pa.C.S. §602.
Since three years have elapsed since the entry of the divorce decree, our authority to vacate the divorce decree is limited to proof of extrinsic fraud. Thus we must determine the precise meaning of extrinsic fraud as set forth in the statute and examine the record to determine if defendant wife has sustained her burden of demonstrating that she was the victim of extrinsic fraud by plaintiff husband.
The distinction between extrinsic fraud and intrinsic fraud has been defined by our Superior Court as follows:
*280 “By the expression ‘extrinsic or Collateral fraud’ is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client’s interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: Pico v. Cohn, 91 Cal. 129, [25 P. 970]. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial.” Fenstermaker v. Fenstermaker, 348 Pa. Super. 237, 502 A.2d 185 (1985), quoting McEvoy v. Quaker City Cab Co., 267 Pa. 527, 110 Atl. 366 (1920).
Generally, judgments regularly entered in adverse proceedings cannot be opened or vacated after they have become final, unless there has been fraud or some other circumstance “so grave or compelling as to constitute ‘extraordinary cause’ justifying intervention by the court.” Simpson v. Allstate Insurance Co., 350 Pa. Super. 239, 504 A.2d 335 (1986); Klugman v. Gimbel Brothers Inc., 198 Pa. Super. *281 268, 182 A.2d 223 (1962). Therefore, our appellate courts have taken a narrow view of what constitutes “extrinsic fraud” in order to avoid unjustifiable disturbance of divorce decrees. In Foley v. Foley, 392 Pa. Super.9, 572 A.2d 6 (1990), our Superior Court held that the actions of the husband in intimidating the wife to the extent that she accepted less than one percent of the marital property in a property settlement agreement established the existence of extrinsic fraud. In Fenstermaker, supra, the court found extrinsic fraud where husband refused to complete settlement negotiations he had expressly promised to continue, and therefore had kept wife away from court by a promise of a false compromise.
In support of her claim of fraud, counsel for defendant wife cites three Pennsylvania cases. In Roach v. Roach, 275 Pa. Super. 320, 418 A.2d 742 (1980), the court vacated a divorce decree where neither the wife nor any attorney on her behalf had received notice of the hearing. In Duessing v. Duessing, 224 Pa. Super. 525, 307 A.2d 382 (1973), the court reversed a decree in divorce and remanded the action for further proceedings before the master where the defendant’s failure to appear before the master was the result of counsel’s oversight. Finally, in Teriberry v. Teriberry, 210 Pa. Super. 521, 232 A.2d 201 (1967) the court granted the opening of the decree where wife was unrepresented by counsel at the master’s hearing and was clearly under the impression there would be another hearing date prior to the entry of a final decree. In the case at bar, the record shows that the plaintiff had notice of the hearing, was represented by counsel throughout the proceeding, and engaged in further consultation with her lawyer after the master’s report was filed. Therefore, we reject defendant’s contention that she *282 has been provided with less than a full and fair hearing on the merits.
In her further attempt to avoid compliance with this court’s decree, defendant wife raises two issues pertaining to plaintiff’s futile attempt to obtain a divorce in the Republic of Haiti. Defendant argues that plaintiff obtained a valid foreign divorce in Haiti on October 6, 1986 and further concealed the existence of said divorce from defendant and this court during Pennsylvania divorce proceedings. The evi-dentiary record fails to support either of the defendant wife’s contentions.
Our appellate courts have uniformly held that an absolute prerequisite to judicial recognition of a foreign divorce is that the plaintiff must have resided in the state or country for a minimum period of residency as determined by local authority and that the residency be accompanied by “domiciliary intent,” i.e., an intent to remain in foreign jurisdiction. Sargent v. Sargent, 225 Pa. Super. 1, 307 A.2d 353 (1973), citing DiMilia v. DiMilia, 204 Pa. Super. 188, 203 A.2d 382 (1964); Fishman v. Fishman, 167 Pa. Super. 428, 74 A.2d 682 (1950). This requirement is jurisdictional and cannot be waived by the acts of the parties. Yohey v. Yohey, 205 Pa. Super. 329, 208 A.2d 902 (1965). The Commonwealth also requires that in order for a foreign divorce to be valid, a defendant spouse must join in the proceeding. Sargent, supra. In the case at bar in support of his claim for divorce on the ground of indignities, the plaintiff presented the following testimony:
“Q: Did you take any steps to obtain a foreign divorce?
“A: What I did there, since we weren’t having any luck with this no-fault thing, I flew to Haiti. I did that for two reasons. The first reason was to give me peace of mind. I felt that in my mind I had to bring *283 this to a conclusion because it was driving me nuts. Even though I realize it doesn’t have any authority in Pennsylvania, but Haiti is a member of the United Nations and has authority under God, and it’s a sovereign nation. So in my mind I’m divorced. So it helped me cope with what I’m going through. The main reason was for me. The second reason I did it was to tell Carol how serious this is and how serious I am. Those were the two reasons I flew to Haiti. Obviously it has no other reason.” (N.T. at 50.)
Applying the criteria set forth by our appellate courts, it is apparent that the absence of domiciliary intent on the part of plaintiff and the absence of any notice to or joinder by defendant in the Haiti proceeding, the Haitian divorce was not valid in Pennsylvania.
A review of the transcript of the master’s hearings also discloses the following:
“Mr. Zulick: I move for introduction of plaintiff’s exhibit 1.
“The Master: Any objection?
“Mr. Hensel: I guess I question the relevancy of that document.
“Mr. Zulick: Dr. Taylor is not here asserting that he is validly divorced pursuant to that decree, because as far as I am aware Mrs. Taylor never submitted herself to the jurisdiction of the Haitian court. However, we are offering it as evidence of Dr. Taylor’s state of mind on the steps he has taken to free himself of his marriage.
“The Master: All right. We will accept it on those grounds, but only for those purposes.” (N.T. at 52.)
Plaintiff’s exhibit 1 was the Haitian divorce decree. Clearly, therefore, wife’s assertion that husband concealed his futile attempt to obtain a Haitian divorce is without foundation in the record. It is apparent that defendant wife’s efforts to vacate the *284 divorce decree are without any merit and clearly frivolous. Further, defendant wife’s failure to comply with the express provisions of the decree of this court constitute dilatory, obdurate and vexatious conduct justifying an award of attorneys fees.
ORDER
And now, December 12, 1990, it is ordered as follows:
(1) The petition of defendant, Carol A. Taylor, to vacate a divorce decree and the rule heretofore issued thereon are dismissed.
(2) The rule heretofore issued upon defendant, Carol A. Taylor, to show cause why she should not be held in contempt of the prior orders of this court is made absolute. Both parties are directed to be present for a hearing on the disposition of the contempt citation on January 29,1991 at 1:30 p.m. in courtroom no. 2, Monroe County Courthouse, Stroudsburg, Pennsylvania. Defendant may purge herself of this contempt by executing all documents necessary to effectuate the prior orders of this court.
(3) Reasonable counsel fees are assessed in favor of plaintiff, James A. Taylor, and against defendant, Carol A. Taylor, as a sanction for dilatory, obdurate and vexatious conduct in these proceedings. Counsel for plaintiff shall file a bill of costs as contemplated by 43 J.D.R.C.P. 252 and further proceedings, if any, shall be in accord with said rule.